Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Frieda K. Zimmerman
Special Assistant United States Attorney
Dan Fruchter
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 08 2023

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

           Plaintiff,

           v.

NATASHA ANN OPSAL

           Defendant.

2:22-cr-53-TOR

PLEA AGREEMENT

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, Frieda K. Zimmerman, Special Assistant United States Attorney, and Dan Fruchter, Assistant United States Attorney, and Defendant NATASHA ANN OPSAL, both individually and through Defendant's counsel, Zachary Ayers, agree to the following Plea Agreement:

    1)    <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees enter a plea of guilty to Count 3 of the Indictment filed on May 3, 2022, which charges Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343, a Class C felony. The Defendant understands that the following potential penalties apply:

        a.    a term of imprisonment of not more than 20 years;

        b.    a term of supervised release of not more than 3 years;

        c.    a fine of up to $250,000;

Plea Agreement - 1

        d.    a $100 special penalty assessment; and

        e.    restitution.

2)    <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. sentencing is a matter solely within the discretion of the Court;

    b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d. that the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

3)    <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear, and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

Plea Agreement - 2

e.  the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if the Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

4)  <u>Waiver of Inadmissibility of Statements:</u>

Pursuant to Federal Rule of Criminal Procedure 11(f), Defendant waives the inadmissibility of any statements made by Defendant in the course of plea discussions with the United States. This waiver shall apply if Defendant withdraws Defendant's guilty plea or breaches this Plea Agreement.

Defendant acknowledges that any statements made by Defendant in the course of plea discussions in this case will be admissible against Defendant in the United States' case-in-chief if Defendant withdraws from, or breaches, this Plea Agreement, in any manner.

5)  <u>Elements of the Offense:</u>

The United States and Defendant agree that in order to convict Defendant of Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Count 3 of the Indictment filed on May 3, 2022, the United States would have to prove the following beyond a reasonable doubt.

*First*, in the Eastern District of Washington and elsewhere, Defendant knowingly and willfully devised and participated in a scheme and artifice to defraud and to obtain money from the United States Small Business Administration and its delegated lender Prestamos CDFI, LLC, by means of false and fraudulent pretenses, promises, and omitted facts;

Plea Agreement - 3

*Second*, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, the SBA and its delegated lender Prestamos CDFI, LLC, to part with money or property;

*Third*, Defendant acted with intent to defraud, that is, the intent to deceive and cheat; and

*Fourth*, Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

6) <u>Factual Basis and Statement of Facts</u>:

The United States and Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

The Paycheck Protection Plan Loan Program

The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and other certain expenses, through a program referred to as the Paycheck Protection Program ("PPP").

In order to obtain a PPP, a qualifying business was required to submit a PPP application signed by an authorized representative of the business. The PPP application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP. In the PPP application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. If the applicant had no employees other than the owner,

Plea Agreement - 4

the applicant was required to provide the gross income amount from a 2019 or 2020 IRS Form 1040, Schedule C. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. Additionally, the application was required to certify that they were in operation as of February 15, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

A business's PPP application was received and processed, in the first instance, by a participating lender. If a PPP application was approved, the participating lender funded the PPP using its own monies. Data from the application, including information about the borrower, the total amount of the loan, the listed number of employees, and the gross income amount, was transmitted by the lender to the SBA, an agency of the United States, in the course of processing the loan.

### The Economic Injury Disaster Loan Program

Another source of relief provided for by the CARES Act was the Economic Injury Disaster Loan ("EIDL") program, an SBA program that provides low-interest funding to small businesses, renters, and homeowners affected by declared disasters. This program authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

In order to obtain an EIDL, a qualifying business was required to submit an application to the SBA providing information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was the year preceding January 31, 2020. The application was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge. The amount of an EIDL, if the application was approved, was determined based, in part, on the information provided in the application about employment, revenue, and cost of goods sold. Any funds issued under an EIDL were determined and issued directly by the SBA. EIDL funds were

Plea Agreement - 5

eligible to be used to payroll expenses, sick leave, production costs, and business obligations such as debts, rent, and mortgage payments. In addition to the EIDL amount, EIDL applicants could also apply to obtain cash advances of up to $10,000 within three days of application. Advances, which were determined based on the number of employees that the applicant certified having, did not have to be repaid.

### Rusty Bumper Mobile Detailing

Beginning no later than on or about April 4, 2020, and continuing through at least July 25, 2021, in the Eastern District of Washington and elsewhere, Defendant devised and intended to devise a scheme to defraud the SBA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

As charged in Count 3 of the Indictment filed on May 3, 2022, on or about April 12, 2021, Defendant NATASHA ANN OPSAL submitted PPP application number 29293039 to SBA listing "rusty bumper mobile detailing" as the Business Legal Name. In the application, Defendant listed the "primary business address" of the purported business as 7911 N. Shenandoah Ct., Spokane, Washington. Defendant falsely stated that the business was established in 2020, had one employee, and had gross receipts of $93,000 in tax year 2020. Defendant also certified that the Applicant was in operation on February 15, 2020. Defendant indicated that the EIN for Rusty Bumper Mobile Detailing was 85-3786210. This application was submitted through the Summit platform, a cloud-based platform located in Oregon. In the application, Defendant certified that the information in the application was true and accurate, subject to criminal penalties for knowingly making false statements.

The representations and certifications made by Defendant NATASHA ANN OPSAL on application number 29293039 were materially false, and Defendant knew they were false at the time they were made. In fact, Rusty Bumper Detailing was not created in 2020, and was not a legitimate existing business at the time of Defendant's PPP application. Moreover, Rusty Bumper Detailing did not have any employees, and

Plea Agreement - 6

did not exist as of February 15, 2020, nor did it have any receipts in tax year 2020. Accordingly, Rusty Bumper Detailing was not eligible for any PPP funding.

Using the above materially false information on application number 29293039, Defendant applied for a PPP of $19,375.00. As a result of the fraud and relying on the materially false and fraudulent representations and certifications made by Defendant on or about April 22, 2021, the lender funded Defendant's PPP for $19,375.00.

This PPP was handled by Prestamos CDFI, LLC, a community development financial institution based out of Phoenix, Arizona, on a delegated basis from the SBA. Prestamos CDFI, LLC, submitted disbursement details for this loan into the SBA E-Tran system located in Sterling, VA. On May 10, 2021, Prestamos CDFI, LLC, disbursed $19,375.00 to Defendant's Spokane, Washington bank account with Coastal Aspiration ending in 4033.

In addition to the conduct charged in Count 3, on or about April 4, 2020, Defendant NATASHA ANN OPSAL applied for an EIDL by submitting application number 3302212935 to the SBA under the name of her purported business, Rusty Bumper Mobile Detailing. In that application, Defendant falsely stated that her purported business had been established on July 15, 2018, that it had 1 employee as of January 1, 2020, and that its 2019 gross revenue was $10,000. In that application, Defendant requested $20,000.00.

On or about March 11, 2021, Defendant NATASHA ANN OPSAL submitted PPP application number 26776140 listing "Natasha Opsal" as the Business Legal Name and listing "Rusty Bumber detailing" [sic] as the DBA or Tradename. In that application, Defendant falsely stated that the business was established in 2019, had 1 employee, and had a gross income of $82,000 in tax year 2020. Defendant also certified that the Applicant was in operation on February 15, 2020. Relying on the materially false and fraudulent representations and certifications made on application number 26776140, Defendant's PPP was funded for $17,082.00.

Plea Agreement - 7

On or about April 2, 2021, Defendant NATASHA ANN OPSAL applied for an EIDL by submitting application number 3318122105 to the SBA as Natasha Opsal DBA Rusty Bumpet [sic]. In that application, Defendant falsely stated that her purported business had been established on January 5, 2019, and that its 2019 gross revenue was $83,000. In that application, Defendant requested $41,500.00.

Further, on or about April 29, 2021, Defendant NATASHA ANN OPSAL submitted PPP application number 30425393 listing "Natasha Opsal" as the Business Legal Name. In that application, Defendant falsely state that the business was established in 2020, had one employee, and had an average monthly payroll cost of $6,916.00. Defendant also certified that the Applicant was in operation on February 15, 2020. Relying on the materially false and fraudulent representations and certifications made on application number 30425393, Defendant's PPP was funded for $17,290.00.

In total, between March 11, 2021, and April 29, 2021, through the use of the interstate wires, Defendant, acting with the intent to defraud, fraudulently sought and obtained 3 PPPs totaling $53,747.00 by submitting materially false and fraudulent information concerning her purported business Rusty Bumper Detailing. In addition to the PPP funds dispersed to Defendant, the United States also incurred a loss of $7,500.00 in lender fees for the PPPs. Additionally, between April 4, 2020, and July 25, 2021, Defendant fraudulently sought EIDL funding of at least $61,500.00, by submitting materially false and fraudulent information to SBA concerning her purported business Rusty Bumper Detailing, resulting in a total actual and intended loss of at least $122,747.00.

7)    The United States' Agreements:

The United States' Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Counts 1, 2, 4, 5, 6, 7, 8, and 9 of the Indictment filed on May 3, 2022. Counts 1, 2, 4, 5, and 6 charge Defendant with five counts of Wire Fraud in violation of 18 U.S.C. § 1343, and

Plea Agreement - 8

counts 7, 8, and 9 of the Indictment filed on May 3, 2022, charge Defendant with three counts of False, Fictitious, or Fraudulent Claims, in violation of 18 U.S.C. § 287.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon the criminal activity set forth in this Plea Agreement that arises out of the Defendant's conduct involving illegal activity charged in the Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing. Nothing in this agreement is intended to release any liability arising under Title 26, United States Code (Internal Revenue Code).

8) <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a) <u>Base Offense Level</u>:

The United States and the Defendant agree that the base offense level for Wire Fraud is 7. U.S.S.G. § 2B1.1(a)(1).

b) <u>Specific Offense Characteristics</u>:

The Defendant and the United States agree to recommend that the Defendant's base offense level should be increased by 8 levels, because the loss amount (actual and intended) was more than $95,000 and less than $150,000. See U.S.S.G. §2B1.1(b)(1)(D). The United States and Defendant are not aware of any other adjustments that apply.

c) <u>Acceptance of Responsibility</u>:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than February

Plea Agreement - 9

8, 2023, the United States will recommend that the Defendant receive a two (2) level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a).

If the adjusted offense level determined by the Court is 16 or greater and the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than February 8, 2023, the United States will, instead, move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

Defendant and the United States agree that the United States may at its option and upon written notice to Defendant, not recommend a downward reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

    d)    <u>Criminal History</u>:

The United States and Defendant have made no agreement and make no representations as to the criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

9)    <u>Incarceration:</u>

The Defendant acknowledges that the United States will recommend a sentence of incarceration no greater than the low end of the sentencing guideline range determined by the Court. The Defendant is free to recommend any legal sentence.

10)    <u>Criminal Fine:</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with

a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

11) <u>Restitution:</u>

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct. With respect to restitution, the United States and Defendant agree to the following:

(a) <u>Restitution Amount and Interest</u>

The United States and Defendant stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an amount of $61,247, and that any interest on this restitution amount, if any, should be waived.

(b) <u>Payments</u>

The parties agree the Court will set a restitution payment schedule based on Defendant's financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

(c) <u>Treasury Offset Program and Collection</u>

Defendant understands the Treasury Offset Program (TOP) collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is

Plea Agreement - 11

satisfied, including, but not limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

(d) Obligations, Authorizations, and Notifications

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of the Defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. The parties agree that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value

Plea Agreement - 12

exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the Court and the United States Attorney's Office within a reasonable period of time, but no later than 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until the fine or restitution order is paid in full, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F) the Defendant understands and agrees that until a fine or restitution order is paid in full, the Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

12) <u>Judicial Forfeiture</u>

Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

<u>MONEY JUDGMENT</u>

A sum of money equal to $19,375.00 in United States currency, representing the amount of proceeds obtained by Defendant from the wire fraud violation charged in Count 3.

Plea Agreement - 13

If any of the property described above, as the result of any act or omission of the Defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

13) <u>Supervised Release</u>:

If the Court imposes a sentence of imprisonment, the United States and Defendant agree to jointly recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a) that the United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b) that the Defendant provide financial information and copies of federal income tax returns, and allow credit checks, at the direction of the United States Probation Office;

Plea Agreement - 14

c) that the Defendant disclose shall all assets and liabilities to United States Probation and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the United States Probation Office;

d) that the Defendant be prohibited from incurring any new debt, opening new lines of credit, or enter any financial contracts or obligations without the prior approval of the United States Probation Office; and

e) that the Defendant participate and complete financial counseling and life skills programs at the direction of the United States Probation Office.

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, up to 2 years in prison.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

14) <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. ' 3013, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

15) <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money to pay toward these obligations by participating in the Bureau of Prisons= Inmate Financial Responsibility Program.

16) <u>Additional Violations of Law Can Void Plea Agreement</u>:

Defendant and the United States agree that the United States may, at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense or tests positive for any controlled substance.

17) <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from the bases set forth in Section 1B1.13 of the Sentencing Guidelines.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

Plea Agreement - 16

18) <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19) <u>Waiver of Attorney Fees and Costs</u>

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

Plea Agreement - 17

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____  N.O.     2/1/23
NATASHA ANN OPSAL                   Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____  ZA     2/1/23
Zachary Ayers                       Date
Attorney for Defendant

Plea Agreement - 19

20) <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case.

This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    2/2/23
Frieda K. Zimmerman           Date
Special Assistant United States Attorney
Dan Fruchter
Assistant United States Attorney

Plea Agreement - 18